**F. Lee HINEBAUGH, Petitioner,**

**v.**

**R. WILEY, Respondent.**

**No. 98–CV–1184 (LEK/RWS).**

United States District Court,
N.D. New York.

March 30, 2001.

F. Lee Hinebaugh, Okahumpka, FL, pro se.

Charles E. Roberts, Asst. U.S. Atty., Office of the United States Attorney, Syracuse, NY, for Respondent.

## MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is Respondent's motion to dismiss and Petitioner's motion to compel a polygraph test. For the following reasons, Respondent's motion is DENIED and Petitioner's motion is DENIED.

## I. BACKGROUND

Petitioner F. Lee Hinebaugh, filed the instant petition for habeas corpus in 1998. The petition alleges that, commencing in December 1996 and continuing through February 1998, various officials at the Federal Correctional Institution located in Ray Brook, New York ("Ray Brook") filed a series of false retaliatory incident reports and disciplinary charges against Petitioner because of disputes he had with Clement P. Shacks, his case manager, and because Petitioner filed grievances against various individuals regarding their treatment of him. Petitioner alleges further that, as a result of these charges, he lost approximately three months of good time credit. The instant petition seeks to have his disciplinary record expunged and to have his good time credits restored.

## II. DISCUSSION

### A. Standard for Dismissal

■ A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can be granted," must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency of a pleading, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *see Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1099 (2d Cir.1988) (applying the principle of construing inferences in favor of plaintiff). As this Circuit has stated, when determining the merits of a motion to dismiss,

consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

 The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that the defendant be given "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (applying this standard to a complaint based upon civil rights statutes).

B. *Prisoner's Petition for Habeas Relief Instead of Filing Civil Rights Action*

 Respondent's first contention as to why the instant petition should be dismissed is that it improperly challenges the conditions rather than the fact or duration of Petitioner's confinement. This Court disagrees. Petitioner's habeas petition seeks to have his disciplinary record expunged and have allegedly unlawfully rescinded good time credits restored.

The restoration of his good time credits and expungement of his disciplinary record would, as alleged, accelerate his release from prison by approximately three months. Such a result challenges both the fact and duration of Petitioner's confinement and his sole remedy in federal court is a properly filed habeas petition under 28 U.S.C. § 2241. *See Edwards v. Balisok*, 520 U.S. 641, 644, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Carmona v. United States Bureau of Prisons*, 243 F.3d 629,

632 (2d Cir.2001). Accordingly, Respondent's motion to dismiss based on the fact that he improperly filed the current matter as a habeas petition instead of a civil rights action is denied.[1]

C. *Dismissal of Counts I and II as Moot*

 Counts I and II of the Petition reference an incident report allegedly issued on December 11, 1996. Respondent, based on information contained in the Petition's introduction, believed that Petitioner was referencing incident report 451918 when making his motion to dismiss. Respondent conducted a review of the Petitioner's prison records and did not find any record of the issuance of that report. Respondent surmised that Petitioner might be challenging incident report number 456116. That report was ultimately expunged from Petitioner's record and according to Respondent rendered Counts I and II moot.

In response, Petitioner submitted a copy of incident report number 45198. That report, issued on November 23, 1996 and delivered to Petitioner at 1:27 A.M. on the morning of November 24, 1996, was ultimately dismissed upon review by prison officials. Thus, assuming Counts I and II of the Petition were based upon incident report 45198 or 456116, they did not result in any loss of good time credits for Petitioner and should be dismissed.

It is unclear to the Court, however, because of the discrepancy between the date the Petition alleges the retaliatory report was filed and the dates that incident reports 45198 and 456116 were filed, whether Counts I and II do reference them. At a minimum, it is possible, based on Petitioner's allegations, that expungement of a

---

1. To the extent Petitioner seeks relief other than the restoration of good time credits, those claims are dismissed as they are not cognizable under 28 U.S.C. § 2241.

different report, filed on December 11, 1996 as the Petition states, may result in the restoration of good time credits. Thus, on the record before the Court, it will not, at this time, dismiss Counts I and II as moot. Respondent is free to renew his request to dismiss these counts as the record develop furthers.

### D. *Failure to Exhaust Administrative Remedies*

■■■ The Second Circuit recently held that federal prisoners seeking to file a habeas petition pursuant to 28 U.S.C. § 2241 must exhaust their administrative remedies prior to filing their petition for habeas relief. *See Carmona*, at 633. If a prisoner fails to exhaust administrative remedies prior to filing a habeas petition, the Court may excuse the default upon a showing of "cause and prejudice." *Id.* at 634; *see also Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 762 (3d Cir.1996). Typically, a prisoner will be able to show cause when there is a legitimate excuse for default. *See Carmona*, at 634; *Rivera–Sanchez v. Crist*, 832 F.Supp. 276, 282 (D.Ariz.1993).

■■■ Objective factors constituting cause include "interference by officials that makes compliance with . . . procedural rule[s] impractical." *Tineo v. United States*, 977 F.Supp. 245, 253 (S.D.N.Y. 1996). Prejudice is typically found when the Petitioner shows actual harm resulting from the alleged violation. *See Rivera–Sanchez*, 832 F.Supp. at 282. Thus, if legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies, the Court may address the merits of the petition notwithstanding any procedural defaults. *Carmona*, at 634.

■■■ Respondent seeks to dismiss Counts IV, V, VII, and VIII because of Petitioner's failure to exhaust administra-tive remedies. Specifically, Respondent argues that a search of Petitioner's administrative records revealed that he did not appeal the incident reports referenced in each of those counts. In response, Petitioner submitted evidence indicating that beginning in January 1997 and extending through February 1997 his legal files were confiscated and not returned until fourteen months later, thereby preventing him from filing all relevant administrative appeals.

Under these circumstances, the Court concludes that Petitioner has shown cause as to why he was unable to file his administrative appeals. Moreover, his inability to obtain access to his legal files also inflicted actual harm on him as he was precluded from challenging the incident reports with the appropriate administrative authorities. As such, the Court denies Respondent's motion to dismiss Counts IV, V, VII, and VIII based on Petitioner's failure to exhaust administrative remedies.

### E. *Incident Reports Not Alleging Loss of Good Time Credit*

■■■ Respondent alleges further that because the incidents referenced in Counts III, IV, V and IX resulted in loss of commissary privileges, loss of a prison job, a fifteen day room restriction, and ten hours extra of duty instead of reductions in good time credit, those claims do not implicate a protected "liberty interest" and should be dismissed. Petitioner argues that each of these incident reports must be examined in context. He claims that each report was unlawfully filed because of his repeated complaints about prison conditions and, regardless of the severity of sanction imposed, was used to increase the amount of good time credit ultimately taken from him when future reports were filed. Thus, Petitioner argues that the reports referenced in these counts do implicate a protected "liberty interest."

■ This Court agrees with Petitioner. Normally, the filing of allegedly retaliatory disciplinary reports that result in the loss of commissary and other non-custodial privileges have only a tangential and speculative impact on the imposition of future administrative sentences imposed on a prisoner. *See Sisk v. CSO Branch,* 974 F.2d 116, 117–18 (9th Cir.1992). They are not "close to the core of habeas corpus" in the sense that expunging them from the prisoner's record does not definitively alter the terms and duration of his confinement. *See Lauranzano v. Ingle,* No. 95–17120, 1996 WL 217923, at *1 (9th Cir.1996); *Georgevich v. Strauss,* 772 F.2d 1078, 1087 (3d Cir.1985).

The rationale for this rule serves a valid administrative policy. The imposition of administrative sanctions on a prisoner for alleged prison violations is left within the discretion of the official charged with levying the sanction. Ultimately, it is difficult, if not impossible, given the discretion vested in these officials, for a court to try and divine the impact of a previous sanction on a later sanction. The situation is different, however, if the administrative record before the Court indicates that the prison officials expressly relied upon the alleged retaliatory reports when imposing a sanction that directly effects the terms and duration of a prisoner's confinement.

In such a situation, the imposition of the earlier sanctions is "close to the core of habeas corpus" in the sense that expunging them from the prisoner's record would definitively alter the terms and duration of the prisoner's confinement. Accordingly, the Court declines to dismiss Counts III, IV, V and IX of Petitioner's habeas petition without a further development of the factual record. If, on a properly filed motion for summary judgment, there is no evidence indicating that the prison officials responsible for taking away Petitioner's good time credits relied upon these alleged retaliatory reports or there is "some evidence", as discussed below, indicating that Petitioner was guilty of the charges contained in these reports, Petitioner's claims regarding these counts will fail.

## F. Incident Reports Alleging Loss of Good Time Credit

■ The loss of good time credit as punishment for prison disciplinary offenses implicates a liberty interest protected under the 14th Amendment. *See Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). A disciplinary hearing that results in a revocation of a prisoner's good time credits satisfies due process if (1) the prisoner is provided written notice of the disciplinary charges at least twenty-four hours in advance of the hearing; (2) a neutral and detached hearing body conducts the hearing; (3) the prisoner is afforded an opportunity to present evidence and call witnesses as long as the presentation of evidence is not unduly hazardous to institutional safety or correctional goals; (4) the prisoner is granted help, if needed, to understand and prepare a defense; and (5) the factfinder provides a written statement of the evidence relied upon in making its decision and the reasons for the decision. *See id.* at 563–567, 94 S.Ct. 2963; *Friedl v. City of New York,* 210 F.3d 79, 85 (2d Cir.2000). Additionally, the "revocation of good time credits does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *See Friedl,* 210 F.3d at 85 (quoting *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)). Under this standard, as long as there is a "modicum" of evidence or "any" evidence in the record to support the conclusion of the disci-

plinary body, its determination will be upheld. *See Zavaro v. Coughlin,* 970 F.2d 1148, 1148–49 (2d Cir.1992).

Respondent argues that the disciplinary charges that resulted in Petitioner's loss of good time credits contained significant evidence warranting the prison board's findings.[2] Particularly, Respondent claims that Counts VI, VIII, X, and XI, each referencing an incident report that resulted in a revocation of Petitioner's good time credits, were supported by "some evidence."[3] The Court will address each Count in turn.

### 1. Count VI

Count VI is based upon incident report 466564. In that report, Petitioner was charged with refusing to obey an order of a staff member and being in an unauthorized area. Petitioner ultimately lost, in part, thirteen days of good time credit because of this violation.

■ On the record before the Court it appears that Officer Wilson and Officer Jezior testified before the prison disciplinary body and indicated that Petitioner was in a room and hallway that he was not authorized to enter. Petitioner argues that he was never in the room or the hallway and that the charges against him were baseless. Under the standard enunciated in *Wolff,* the Court will not "independently assess the charging officer's reliability" and concludes that this testimony provided "some evidence" for the disciplinary body to make their finding regarding Petitioner's guilt. *See Ames v. Artuz,* No.

86 CIV 1924, 1989 WL 54114, at \*6 n. 10 (S.D.N.Y. May 16, 1989) (recognizing the tension between "the some evidence standard, on the one hand, and the fact that the allegedly false charge in the instant case constitutes that very evidence" but nevertheless relying upon it to dismiss Plaintiff's complaint).

■ The more difficult question, which cannot be answered on the pleadings, is whether Plaintiff's allegation that prior retaliatory incident reports were used to unlawfully enhance his sentence has any merit. Because the record does not indicate whether the hearing guard relied upon previously filed unlawful reports when passing sentence on Petitioner or whether any such reports were supported by "some evidence," the Court denies Respondent's motion to dismiss at this point. If Respondent, upon a properly filed motion for summary judgment, brings to the Court's attention evidence indicating that the sentencing officer did not rely upon previously filed reports or that any such reports relied upon were based upon "some evidence," Count VI will fail.

### 2. Count VIII

Count VIII is based upon the issuance of incident report 489622 to Petitioner. In that report, he was sanctioned for remaining in the prison law library without a pass and ultimately lost fourteen days of good-time conduct. Petitioner alleges that his sentence for this violation was unlawfully enhanced because of his previous violations.

---

**2.** Petitioner does not allege any violations of procedural due process so the Court's discussion will be limited to this issue.

**3.** Count VII, referencing incident report 491782, also resulted in the loss of fourteen days good time credit but Respondent made no arguments as to the sufficiency of evidence

underpinning it. Moreover, Petitioner's description of the events surrounding the issuance of this report provides little basis for the Court to determine whether any evidence supports the disciplinary body's finding of Petitioner's guilt. The Court therefore will not address that Count in the instant opinion.

██ Like the claim in Count VI, the Court concludes that because Petitioner admits he was in the law library without a pass, his conviction is supported by "some evidence." However, for reasons already discussed, because Petitioner claims that his sentence was unlawfully enhanced because of prior retaliatory reports, the Court will not dismiss this claim until a cursory examination of the sentencing record for Petitioner's conviction is conducted. If this examination does not indicate that the sentencing officer expressly relied on any previously alleged retaliatory reports, Petitioner's claim regarding this Count will fail. Alternatively, if the hearing officer did rely on a previously filed and allegedly retaliatory report but the conviction underlying that report's filing is supported by "some evidence," Petitioner's claim will fail.

### 3. Count X

Count X alleges that incident report 561446, issued on February 10, 1998, was unlawfully filed against Petitioner in retaliation for exercising his First Amendment right to file a grievance with the Bureau of Prisons. In that report, Plaintiff was found guilty of insolence to a staff member when he drafted an "Informal Resolution" seeking to alter the conditions in Ray Brook's law library. In that "Resolution" Petitioner wrote that Josette M. Zielinski, a prison employee, "allows the law library to be run like a zoo because she is too busy masturbating and having sex with cats."

██ It is well settled that prisoners have a constitutionally protected first amendment right to petition the government for alleged grievances. *See Nicholas v. Remillard,* No. 92 CV 900, 1997 WL 711385, at *4 (N.D.N.Y. Nov.13, 1997) (citing *Bradley v. Hall,* 64 F.3d 1276, 1279 (9th Cir.1995)); *Alvarez v. City of New York,* 31 F.Supp.2d 334, 343 (S.D.N.Y.

1998). In accordance with this rule, Courts have held that when a prisoner files a written grievance with the government containing "hostile, sexual, abusive or threatening" language, he may not be punished for filing it. *Bradley,* 64 F.3d at 1282. To hold otherwise forces a court to draw a hazy line between hostile and abusive language and honest, unabashed airing of a grievance, "leaving the aggrieved prisoner guessing whether he will be punished for what he has said in his formal prison complaint." *Id.* at 1281. "If there is any time a prisoner should be permitted to speak freely, it is at the bar of justice." *Id.*

██ Although the Court disagrees with Petitioner's choice of words, his Petition alleges that he placed those words in his grievance to emphasize the point that the law library was "literally run . . . like a zoo—with prisoners sleeping at tables, reading newspapers, copying pornography on the copying machine, talking sports, and otherwise making it totally impossible to read, comprehend, [and] research case law." Moreover, Petitioner pilfered the cat masturbation reference from a Fifth Circuit opinion holding that sanctioning a prisoner for placing such language in a letter to his girlfriend violated the prisoner's First Amendment rights. *See McNamara v. J.C. Moody,* 606 F.2d 621, 625 (5th Cir.1979). Given Petitioner's unfettered right to file a grievance with the government and the fact that the language included, although inappropriate, was allegedly utilized to illustrate his point regarding his perception of prison conditions, the Court does not conclude that, at least at the pleading stage, dismissal is warranted.

It may in fact turn out, after further discovery, that Petitioner did not actually place this language in an actual grievance filed with the Bureau of Prisons or that

circumstances otherwise dictate that he never had any intention to utilize his "Informal Resolution" to seek legitimate redress. If this does turn out to be true, Petitioner's speech will not be protected under the rule enunciated in *Bradley* and his Claim will once again be subject to dismissal. However, on the sparse record before the Court, no determination regarding this issue can be made nor can any determination be made whether the sentencing officer relied upon previously filed retaliatory reports when passing judgment on Petitioner. As such Respondent's motion to dismiss this Count is denied.

### 4. Count XI

■ Count XI alleges that incident report 561709, issued on February 12, 1998, was filed in further retaliation against Petitioner for the "masturbating cat" incident. The facts of that report, as alleged in the Petition, indicate that Petitioner received "something of value" from another prisoner in violation of prison regulations. That "something of value" was a copy of a court case possibly given to a law library staff member by another prisoner and ultimately passed to Petitioner. As a result of this violation, Petitioner was placed for fifteen days in the prison's "special housing unit" and lost fourteen days of good-time credit while the prisoner who allegedly passed him the unauthorized case was given a verbal warning.

Respondent provides no evidence, let alone some evidence, to indicate why the severity of Petitioner's sanction for the violation was greater than the sanction placed upon the prisoner who allegedly provided him the copy of the court case. Moreover the two day time discrepancy between the incident report referenced in Count X and the one referenced here supports Petitioner's inference that it was filed in retaliation for the previous inci-

dent. Consequently, Respondent's motion to dismiss Count XI is denied until the record is developed further.

### G. *Petitioner's Motion to Compel a Polygraph Test*

■ Petitioner seeks an order from the Court mandating that various individuals undergo polygraph examinations so that he can show that the allegations contained in various incident reports are false. The remedy Petitioner seeks is drastic. This is particularly so in light of the fact that the Court's role in assessing whether "some evidence" exists to support the claims contained in the alleged retaliatory incident is limited.

The Court will not retry the merits of those claims nor does the "some evidence" standard "require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence" presented to prison officials. *Hill*, 472 U.S. at 455–56, 105 S.Ct. 2768. As such, it certainly does not require the Court to order various prison officials to submit to a court-ordered polygraph test in order to ascertain if their testimony in a prisoner's disciplinary hearing was truthful. Consequently, Petitioner's motion denied.

### III. CONCLUSION

Accordingly, it is hereby

ORDERED that Respondent's motion to dismiss is DENIED; and it is further

ORDERED that Petitioner's motion to compel a polygraph test is DENIED; and it is further

ORDERED that the above captioned matter is referred to the Honorable Ralph W. Smith, Jr., United States Magistrate Judge, in accordance with Local Rule 72.3(c) and 28 U.S.C. § 636(b), for all future proceedings; and it is further

ORDERED that the Clerk serve a copy of this order on all parties by regular mail.

IT IS SO ORDERED.